In re Aaron STERN, Debtor.

Aaron STERN, Plaintiff,

v.

Barbara MUNROE, et al., Defendants.

Bankruptcy No. 83–503–JG.
Adv. No. A84–224.

United States Bankruptcy Court,
D. Massachusetts.

June 15, 1984.

George R. Desmond, Framingham, Mass., for plaintiff.

James Liston, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for defendants.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

Before the Court for determination are the debtor's Motion to Avoid Lien of Barbara Munroe *et al* and the debtor's Complaint for Contempt against Barbara Munroe *et al*. The debtor seeks to avoid the lien for condominium common expenses and seeks a judgment of contempt against the trustees for pursuing two actions in state court concerning the lien. The Court held a hearing on each matter, and the parties agreed to all relevant facts. Briefs were filed by both parties. Based upon the stipulated facts and a review of applicable law, I find and rule as follows.

The debtor, Aaron Stern, ("the debtor" or "Stern") owns a condominium unit at Weymouthport Condominiums, Weymouth, Massachusetts, a condominium established pursuant to *M.G.L.* c. 183A Sec. 1 *et seq.* The defendants, Barbara Munroe, *et al*, ("the trustees") are trustees of the organization of condominium unit owners under a declaration of Trust dated August 27, 1973. Stern filed a voluntary Chapter 7 bankruptcy petition on April 4, 1983. On April 20, 1983, the trustees brought an action in the Superior Court Department, Norfolk Division, pursuant to Massachusetts General Laws Chapter 254 Section 5[1] and Massachusetts Laws Chapter 183A Section 6(c)[2] to recover $1781.81 for unpaid common expenses and to establish a priority lien in that amount. This amount was owed prior to bankruptcy. Neither the trustees nor their attorney knew about the bankruptcy filing until April 25, 1983. On June 2, 1983, the trustees filed a request for relief from stay which apparently was not pursued. The Chapter 7 trustee abandoned his interest in the condominium unit. The debtor received a discharge on March 1, 1984.

At the hearing on debtor's Motion,[3] debtor's counsel limited his request for avoidance of the lien to the extent of amounts having accrued during the ninety days before the filing of the bankruptcy petition.

---

1. M.G.L. c. 254 Section 5 (1973) provides:

   A lien upon land for the erection, alteration, repair or removal of a building or other structure or a lien established under section seventy-six of chapter sixty-three, or under section six of chapter one hundred and eighty-three A shall be enforced by a civil action brought in the superior court for the county where the land lies. The plaintiff shall bring his action in his own behalf and in behalf of all other persons in interest who shall become parties. An attested copy of the complaint, which shall contain a brief description of the property sufficient to identify it, and a statement of the amount due, shall be filed in the registry of deeds and recorded as provided in section nine. All other parties in interest may appear and have their rights determined in such action, and at any time before entry of final judgment, upon the suggestion of any party in interest that any other person is or may be interested in the action or of its own motion, the court may summon such person to appear in such cause on or before a day certain or be forever barred from any rights thereunder.

   The court may in its discretion provide for notice to absent parties in interest. The terms "party in interest" and "person in interest", as used in this chapter, shall include mortgages and attaching creditors.

2. M.G.L. c. 183A Section 6(c) (1964) provides:

   (c) The unit owner's share of the common expenses shall constitute a lien upon his unit and shall be enforced in the manner provided in section five of chapter two hundred and fifty-four. Such lien shall have priority over all other liens, except municipal liens and first mortgages of record, as to such portion of said common expenses as became due within six months prior to the commencement of an action to enforce such lien pursuant to said section five.

3. Although the debtor's request to avoid the lien as a preferential transfer should have been made by complaint, see Bankruptcy Rule 7001(2), since no objections were raised to the procedure, and the facts were undisputed, the Court decided to hear the matter as presented in the interest of saving time.

The Court took this issue under advisement, and further indicated to debtor's counsel and to counsel for the condominium trustees that the action in Norfolk Superior Court could continue in all other respects, including recovery of post-petition common expenses. On September 19, 1983, the trustees brought a second action in Norfolk Superior Court to collect and establish a priority lien on unpaid common expenses which accrued after the bankruptcy filing in the amount of $5468.43. The debtor's adversary proceeding filed on June 15, 1984 seeks a judgment of contempt against the condominium trustees for their having filed and pursued the state court actions after the filing of the bankruptcy petition, said actions being in violation of the automatic stay of 11 U.S.C. Section 362(b)(1). The Superior Court Judge dismissed the first action for prepetition expenses as against Stern individually, and refused to dismiss that part of the action seeking to enforce the trustee's lien against the unit, reasoning that the lien was enforceable against a bankruptcy trustee under Section 546(b) of the Code. The Superior Court Judge denied Stern's Motion to Dismiss the second action, which cause of action arose after the filing of the bankruptcy petition.

The Court first will analyze the debtor's contention that the condominium trustee's common expense lien is avoidable as a preferential transfer.

█ It is axiomatic that a valid lien passes through a bankruptcy case unaffected and remains enforceable in rem after the debtor's discharge, *see L. King, 3 Collier*

*on Bankruptcy*, Par. 524.01 at 524–14–16 (15th ed. Supp.1983), unless the lien is disallowed as a secured claim, *see* 11 U.S.C. Sections 502(e), 506(d), or is subject to challenge under one of the numerous avoiding provisions, *see* 11 U.S.C. Sections 522(j), 544, 545, 547, 548, 549. In the present case, the debtor has not requested that the lien be disallowed as a secured claim pursuant to Sections 502 and 506, but, rather, the debtor attempts to avoid the lien to the extent it accrued within ninety days of bankruptcy through Section 522(h) [4] as a preferential transfer.[5] The condominium trustees assert that their lien is a statutory lien specifically excepted from status as a preferential transfer under Section 547(c)(6). Therefore, even if the lien were considered a preferential transfer it is not subject to attack if it is "a transfer ... that is the fixing of a statutory lien that is not avoidable under Section 545 of this title." 11 U.S.C. Section 547(c)(6). The term "statutory lien" is defined in the Code as a lien "... arising solely by force of a statute on specified circumstances and conditions....". 11 U.S.C. Section 101(38). The legislative history embellishes the definition, explaining: "A statutory lien is only one that arises automatically and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples. Tax liens are also included in the definition of statutory liens." H.R.Rep. No. 595, 95th Cong. 2nd Session 314, 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6271

---

**4.** 11 U.S.C. Section 522(h) permits the debtor to assert certain of the trustee's avoiding powers, including the power to avoid preferential transfers as defined in Section 547.

**5.** 11 U.S.C. Section 547(b) (1979) provides:
(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer—
(i) was an insider; and
(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(1978). *See L. King, Collier on Bankruptcy*, Section 101.38 (15th ed. Supp.1983).

An examination of the Massachusetts statutory scheme reveals that the condominium trustees' lien is a statutory lien as the term is defined in the Bankruptcy Code. A condominium association is required to maintain common areas. *M.G.L.* c. 183A Section 11. The expenses of maintaining common areas, known as common expenses, *see M.G.L.* c. 183A Section 1(8) and 10(b)(4), accrue on a continuing bases and are charged on a percentage basis to unit owners. *M.G.L.* c. 183A Section 6(a). A unit owner's obligation for common expenses gives rise to a lien upon his unit by reason of *M.G.L.* c. 183A Section Section 183A Section 6(c), which states:

> The unit owner's share of the common expenses shall constitute a lien upon his unit and shall be enforced in the manner provided in section five of the chapter 254. Such lien shall have priority over all other liens, except municipal liens and first mortgages of record, as to such portion of said common expenses as become due within six months prior to the commencement of an action to enforce such lien pursuant to said section five.

*M.G.L.* c. 183A Section 6(c). The association's lien for common expenses is solely a creature of statute, similar to other types of liens created by operation of statute. *See M.G.L.* c. 255 Section 25 (garagekeeper's lien); *M.G.L.* c. 254 Section 1 (mechanics' lien); *M.G.L.* c. 60 Section 37 (municipal lien for real estate taxes). The requirement of a judicial action to enforce the lien and establish its particular priority does not transform its essential character to a judicial lien; the existence of the lien is not dependent on judicial action. *See In Re Ribeiro*, 7 B.R. 359, at 361 (Bankr.D.Mass. 1980); *In Re Riverfront Food & Beverage Corp.*, 29 B.R. 846 (Bankr.E.D.Mo.1983). In light of the nature of the lien under Massachusetts law, I find that the trustee's lien for common expenses is a statutory lien as that term is defined in the Bankruptcy Code.

Although a statutory lien falls within the definition of a transfer for the purposes of ascertaining a preference, 11 U.S.C. 101 (40) and Section 547(e)(1), a statutory lien is specifically excepted from avoidance as a preference as long as the statutory lien is not subject to challenge under Section 545 of the Code, which provides for avoidance of certain statutory liens. See 11 U.S.C. Section 547(c)(6); *In Re Riverfront Food & Beverage Corp.*, 10 B.C.D. 1007, 1010, 29 B.R. 846, 851 (Bankr. E.D.Mo.1983): thus if the statutory lien is not a type capable of being avoided under Section 545 it is not subject to challenge as a preferential transfer. *In Re Biddle*, 11 B.C.D. 480, 31 B.R. 449 (Bankr.N.D.Iowa 1983).

Section 545 of the Bankruptcy Code provides instances where statutory liens are invalid and states as follows:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> (1) first becomes effective against the debtor—
>
> (A) when a case under this title is commenced:
>
> (B) when an insolvency proceeding other than under this title concerning the debtor is commenced;
>
> (C) when a custodian is appointed or takes possession;
>
> (D) when the debtor becomes insolvent;
>
> (E) when the debtor's financial condition fails to meet a specified standard; or
>
> (F) at the time of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien:
>
> (2) is not perfected or enforceable on the date the petition against a bona fide purchaser that purchases such property on the date of the filing of the petition, whether or not such a purchaser exists;
>
> (3) is for rent; or
>
> (4) is a lien of distress for rent.

The debtor does not contend that the trustee's common expenses lien is invalid under subsections (1), (3), or (4) of Section 545, and those subsections are inapplicable. The debtor argues that the condominium trustee's lien is invalid under Section 545(2) asserting that the lien is not enforceable against a hypothetical bona fide purchaser as of the date of the bankruptcy filing. The question of whether a statutory lien is enforceable against a bona fide purchaser on the date of the filing of the bankruptcy petition is determined by reference to the state law which created the lien. *In Re Cambron Corporation,* 27 B.R. 723, 725 (Bankr.E.D.Mich.1983).

Massachusetts law provides for the automatic creation of a lien on a condominium unit for a unit owner's share of common expenses. *M.G.L.* c. 183A Section 6(c). The plain meaning of the statute compels the conclusion that the lien arises when the unit owner's obligation for his share of common expenses arises. The statute specifically states that an owner's share of expenses is a lien on his unit. That the language of the statute is phrased in the present must be considered intentional. The lien comes into existence the moment the unit owner incurs an obligation to the condominium association of unit owners, that is, the moment the benefit is provided by the association. The statutory language does not provide that the lien arises upon assessment, demand, or upon occurrence of any other event. Moreover, the establishment of the lien is not dependent on the commencement of a lawsuit, which only is a step necessary to elevate the status of the lien to a position superior to other encumbrances, other than municipal liens and first mortgages. *See M.G.L.* c. 183A Section 6(c). Section 6(c). Since the lien for common expenses automatically attaches to the unit, it need not be recorded; no independent action is necessary to establish its validity. Finally, under the Massachusetts statute a bona fide purchaser cannot buy a condominium unit free and clear of a lien for common expenses, unless a certificate from the association of the amount of unpaid expenses is recorded.

*M.G.L.* c. 183A Section 6(d). Thus in the absence of a "6(d) certificate" any transfer of a condominium unit is subject to the lien for common expenses.

Although there are no Massachusetts decisions interpreting the scope of the Section 6 lien, reference to other similar real estate liens arising by operation of state law is instructive. Mechanics liens under *M.G.L.* c. 254 Section 1 *et seq.,* liens for storage of aircraft and *M.G.L.* c. 255 Section 31E, and liens for automobile repair or storage under *M.G.L.* c. 255 Section 25, all arise when the benefit is conferred. *See In Re Ribeiro,* 7 B.R. 359 (Bankr.D.Mass. 1980). Upon examination of this statutory scheme, especially in view of Section 6(d) which requires the recording of a certificate to discharge the lien, it is my conclusion that the lien for common expenses would be enforceable against a hypothetical bona fide purchaser as of the date of the filing of the bankruptcy petition, and, therefore, is not voidable under Section 545(2), which in turn excepts the statutory lien from status as a preferential transfer.

The debtor's contention that the lien for common expenses is in fact a secret lien is unmeritorious. Although the debtor is correct that secret liens are not valid, the lien under scrutiny is hardly secret. Given the very clear provisions of the law, the world is on notice of the existence of the lien on any condominium unit. In fact, conveyancers universally insist on discharge of the lien for common expenses to insure good title. *See M. Parker, 28 Mass. Practice Series,* Section 595 at 730 (Supp.1983). The decision cited in the debtor's brief is not instructive on this issue. *Matter of Mission Marine Associates, Inc.,* 633 F.2d 678 (3d Cir.1980) upheld avoidance of a materialman's lien as an invalid statutory lien (construing Section 67(c)(1)(B)9, the predecessor to Section 545(2)) because the particular unrecorded, non-possessory materialman's lien under New Jersey law was invalid against bona fide purchasers, and thus the trustee. Here, the lien for common expenses would be valid against bona fide purchasers and is a statutory lien a

trustee and the debtor through Section 522(h) may not avoid. Accordingly, the debtor's Motion to Avoid Lien is denied.

The second matter before the Court for determination is the debtor's Complaint for Contempt, in which he seeks a Judgment of Contempt against the Trustees of the Condominium Trust for having violated the automatic stay of 11 U.S.C. Section 362 in filing and pursuing two lawsuits in state court to recover common expenses from the debtor and to establish the priority under *M.G.L.* c. 183A section 6(c). The relevant facts have been summarized previously in this memorandum. *See supra* at 16–17.

■ Based upon a review of the circumstances surrounding the state court actions, in my view a contempt citation against the trustees is not appropriate.

The commencement of the first action filed on April 20, 1983 twenty days after the filing of the bankruptcy, was not a violation of the automatic stay of Section 362(a)(1). Expressly excepted from the effect of the automatic stay is "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under Section 546(b) ..." 11 U.S.C. Section 362(b)(3). Reference to Section 546(b) reveals that a trustee's powers "... are subject to any generally applicable law that permits perfection of an interest in property to be effective against any entity that acquires rights in such property before the date of such perfection. 11 U.S.C. Section 546(b). Thus, notwithstanding the automatic stay, post-petition action to perfect a statutory lien is permissible as long as, under state law, perfection relates back to a pre-filing date. *See In Re Yobe Electric, Inc.,* 30 B.R. 114, 117–18 (Bankr.W.D.Pa.1983); *L. King, 4 Collier on Bankruptcy,* Par. 546.-03, at 546–8 (15th ed. Supp.1983).

In the present case, the action was not to perfect the actual lien for common expenses, but was nonetheless to perfect a priority for the previous six months unpaid common expenses over and above other encumbrances (except for municipal liens and first mortgages). The lawsuit relates back to defeat any intervening lien creditor during the six month period, in this case relating back to a pre-filing date, and was therefore excepted from the provisions of the automatic stay pursuant to Section 546(b). Therefore it cannot be said that the trustees were in contempt of the stay when they filed the action.

■ Moreover, I would not hold the trustees in contempt for filing this action because at the time they had no knowledge of the pendency of bankruptcy proceedings. Where a creditor's violation of the automatic stay is unintentional the remedy of contempt is inappropriate and overly harsh. *In Re Augustino Enterprises, Inc.* 13 B.R. 210 (Bankr.D.Mass.1981); *In Re Intaco Puerto Rico, Inc.,* 494 F.2d 94, 96 (1st Cir. 1974). In the present case even if in violation of the stay the commencement of the action was unintentional. Furthermore, the action was not pursued until this Court, at a hearing in March of 1984, suggested to the parties that the action could continue in certain respects.

■ For the same reason, commencement of the second action cannot be considered an intentional violation of the automatic stay. At the same March hearing, I advised the parties that, in my opinion, the automatic stay did not bar the second lawsuit since it sought to recover and establish priority of the lien for common expenses accruing after the filing of the Chapter 7 petition. Claims arising after the commencement of the case are not subject to the automatic stay or the Chapter 7 discharge. *See Turner Broadcasting System, Inc. v. Sanyo Elec., Inc.,* 33 B.R. 996 (Bankr.N.D.Ga.1983). The state court judge agreed with this analysis and denied Stern's Motion to Dismiss the second action. Therefore, since the second action was appropriately commenced, contempt is out of the question.

For these reasons, judgment is granted for the defendants in Adversary Proceeding Number A84–224 and the debtor's Mo-

tion to Avoid Lien of Barbara Munroe, *et al,* is denied.