**In re William N. ROSTECK and Joyce M. Rosteck, Debtors.**

**Bankruptcy No. 83 B 11870.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 21, 1988.

**74**

John Patrick Brundage, Chicago, Ill., for debtors.

Marshall N. Dickler, Ltd., Arlington Hts., Ill., for Association.

## MEMORANDUM OPINION AND ORDER

ERWIN I. KATZ, Bankruptcy Judge.

This cause comes before the Court on debtors' Petition for Rule to Show Cause against Old Willow Falls Condominium Association ("Association") for an alleged violation of the discharge granted on December 8, 1983.

The debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 27, 1983. At the time they owned a condominium unit. The Condominium By–Laws and Declaration provide that "no unit owner may waive or otherwise escape liability for the assessments provided for herein by nonuse of the common elements or abandonment of his unit." The debtors had attempted to sell the unit without success, were not able to meet their payments and abandoned the unit prior to filing their petition in April 1983. The debtors included the Association as a creditor on their Schedule A–2, describing the debt as "possible liability for condo assessments at 880 Willow Road, Condo," listing the amount of the claim as $500. The interim trustee made a finding of no

assets and abandoned his interest in the condominium. An Order of Discharge was entered on December 8, 1983.

The first mortgage holder, Glenview State Bank, filed a mortgage foreclosure proceeding in state court and obtained title to the property on or about November 11, 1984. Association filed a cross-complaint and foreclosure action in that proceeding against the debtors for assessments allegedly coming due after the date of the filing of the bankruptcy, and $4,500 in legal fees incurred through the proceeding relating to assertion of its lien rights. That court held that Association failed to protect its priority and found that the first mortgage holder was entitled to priority in the foreclosure sale. The foreclosure sale did not yield sufficient funds to make any payment to Association.

Association then obtained a personal judgment against the debtors and attempted to enforce its judgment against the personal income of the debtors.

The debtors have asserted that they are protected by the discharge.

Association argues that all of the assessment fees coming due after the date of the filing of the bankruptcy are post-petition debts, and, were therefore, not discharged. In essence, Association believes it has a super debt which is nondischargeable.

Section 101(11) of the Bankruptcy Code (11 U.S.C. § 101 et seq.) states that "debt" means liability on a claim; § 101(4) states that "claim" means (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; ...."

Examples of the Code's intent to give the debtor a discharge of all possible claims are found in § 502, such as rejection of executory contracts and unexpired leases, allowance of contingent or unmatured claims, and estimation of claims for bankruptcy purposes.

In, *In the Matter of Baldwin–United Corp.,* 48 B.R. 901, 13 C.B.C.2d 180, 185 (Bankr.S.D.Ohio 1985) the court, in consid-

ering the extent of the definition of § 101(4), considered the legislative history of this section and stated:

> The legislative history of § 101(4) confirms ... 'by this broadest possible definition ... the bill contemplates that all legal obligations of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.' H.R. 95–595, 95th Cong. 1st Sess. 309 (1977) Senate Report No. 95–989, 95th Cong.2d Sess. 21 (1978) (emphasis added by the Baldwin court).

In the above-cited case, the court was dealing with third-party claims and found that although the cause of action did not arise until after the filing of the bankruptcy, the underlying acts preceded the bankruptcy. The court, therefore, held that for bankruptcy purposes the claim would be treated as having arisen prepetition, since under the definition of "claims" those obligations are included which are neither mature, liquidated or fixed.

In another matter involving the same debtor, *In the Matter of Baldwin–United Corp.,* 55 B.R. 885, 898 (Bankr.S.D.Ohio 1985), the court repeated its earlier findings as to the broad definition of "claim". In dealing with contingent claims, the court stated:

> The combined effect of § 101(4) and § 502(c) is to bring all claims of whatever nature into the bankruptcy estate and to give all claimants the same opportunity to share in any distribution from the estate....
>
> Equally important, Congress has insured that the debtor will receive the complete discharge of his debts and a real fresh start, without the threat of lingering claims "riding through" the bankruptcy.

The Association relies on *In Re Stern,* 44 B.R. 15 (Bankr.D.Mass 1944), in support of its position that the post-petition assessments are nondischargeable. Other than the fact that the debt arose from condominium assessments, the issues addressed in *Stern* are not really similar to those in the case at bar. In *Stern* the debtor sought,

(a) to *avoid liens* for condominium "common expenses" as preferences (as to that portion accruing within 90 days prior to the filing of the petition), and; (b) to hold the Condominium Trustee in contempt for bringing two state court actions in violation of the automatic stay.

The first state court action was brought without knowledge of the bankruptcy and sought a ruling on the priority of the lien of the Condominium Association for prepetition arrearages. The second was brought, with permission of the bankruptcy court, seeking similar relief as to post-petition assessments. Both state court actions were in the nature of a § 547(c)(6) proceeding to fix a statutory lien. Both were in rem proceedings going against the property.

The bankruptcy court held that the action seeking a determination as to priority of the lien was not a violation of the stay, reasoning that the condominium's lien is a statutory lien of the type not avoidable under 11 U.S.C. § 545, and held further that the seeking of a determination of priority is allowed under the exception of 11 U.S.C. § 362(a)(1) and 11 U.S.C. § 546(b).

In the case at bar, unlike *Stern,* the creditor, following the bankruptcy case, and with full knowledge of the case and of the debtor's discharge, brought a collection action against the debtor personally.

The court in *Stern* did state, as dicta, that "claims arising after the commencement of the case are not subject to the automatic stay or the Chapter 7 discharge", with the implication being that the post-petition condominium fee assessments were post-petition debts. That issue was not, however, before the court. It is also unclear from the *Stern* decision whether or not the debtor, in that case, continued in possession of the condominium unit. Further, the *Stern* court was not dealing with an action brought against the discharged debtor.

It is fundamental to the Bankruptcy Code that the debtor be given a "fresh start."

This court finds that the liability for condominium assessment fees arose prepetition. All assessments coming due after the filing of the petition were merely unmatured portions of the original liability. The debtors listed the creditor. Association was on notice that the debtor intended to discharge its liability.

Section 524(a) of the Bankruptcy Code states:

> A discharge in a case under this title—
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under § 727 ... whether or not discharge of such debt is waived;
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

The Association's judgment is null and void as against the debtors personally. The Association's prosecution of its action is in violation of the discharge injunction.

The creditor argues that the debtor should have replied in the state court action. That approach distorts the meaning of the Bankruptcy Code. It is unnecessary for the debtor to take any action in a suit that is violative of his discharge when there is a direct, knowing violation by a creditor. 3 *Collier on Bankruptcy* § 524.01 (15th ed. 1979).

This court hereby orders, adjudges and declares that the judgment entered in the State Court against the debtors personally is null and void.

A Rule shall issue against Old Willow Falls Condominium Association to appear before this court on May 17, 1988, at 11:00 o'clock a.m. to Show Cause why it shall not be held in contempt of this court. Counsel for debtors is further directed to prepare and submit his Petition for appropriate sanctions, fees and damages.