**In re William N. ROSTECK and Joyce M. Rosteck, Debtors.**

No. 88 C 8435.

United States District Court, N.D. Illinois, E.D.

Dec. 23, 1988.
Ruling Vacated April 19, 1989.*

* Opinion published at 85 B.R. 73 is affirmed.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on appeal from a memorandum opinion and order entered in the bankruptcy court on April 21, 1988, 85 B.R. 73 (Bankr.N.D.Ill.1988). For the following reasons, the ruling of Bankruptcy Judge Erwin I. Katz is reversed and remanded.

### FACTS

William N. Rosteck and Joyce M. Rosteck, his wife ("Debtors") purchased Unit 166, part of the Association, on July 1, 1981 for $41,700.00. On March 28, 1983, Debtors bought a new principle residence located at 263 East Country Drive in Bartlett, Illinois for $68,500. Debtors were unable to sell Unit 166, and when they moved to Bartlett, ceased paying condominium assessments on Unit 166.

The Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 27, 1983. The Association was included on the debtors' Schedule A–2 for "possible liability for condo assessments at 880 Willow Road, Condo", listing the amount of the claim to be $500. An interim trustee made a finding of no assets and abandoned his interest in Unit 166. Debtors were discharged on December 8, 1983.

On December 22, 1983, Glenview State Bank as holder of the first mortgage on Unit 166 filed a foreclosure action naming the Debtors and the Association as defendants. A judgment of foreclosure was entered on November 7, 1984 which allowed the Association a lien for post-petition assessments. The judgment provided that the lien of Glenview State Bank was prior

to the Association's lien. A subsequent sheriff's sale of Unit 166 produced insufficient funds to satisfy any portion of the Association's judgment.

Association then obtained a personal judgment against the Debtors for $6,421.75 for post-petition assessments and legal fees and attempted to enforce the judgment against the personal income of the Debtors. On August 14, 1986, Debtors filed a petition for rule to show cause to enjoin the Association against any attempt to collect a personal judgment against the Debtors and for attorneys' fees. Debtors claim that they are completely protected from the Association's actions by the discharge. Association argues that all of the assessment fees coming due after the date of filing for Bankruptcy, September 27, 1983, are post-petition debts and, as such, were not discharged.

Bankruptcy Judge Katz granted the relief sought by Debtors, and entered judgment against the association in the amount of $1600. The Association filed a Notice of Appeal under Rule 8002 on August 25, 1988.

### DISCUSSION

Bankruptcy Rule 8013 governs the district court's authority to review a decision of the bankruptcy court. The district court sits as an appellate tribunal and has the power to affirm, reverse, modify, or remand the case with instructions for further proceedings. District courts reviewing bankruptcy decisions may exercise plenary review of the interpretation and application of legal principles. See *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98 (3rd Cir.1981).

Appellant argues that the bankruptcy court erred in three respects: 1) post-petition assessments should not be viewed as part of the pre-petition claim that was subject to Debtors' discharge; 2) that abandonment by the Trustee should not equate with abandonment by the Debtors; and 3) that awarding sanctions and attorneys fees to Debtor was improper. The court agrees with all three assertions.

A Chapter 7 discharge, similar to a Chapter 13 discharge, generally relieves the Debtor of debts "provided for" under the Plan. In other words, debts listed on the Debtor's Schedule A–2 will be discharged under the Plan. In this case, the Debtors listed the Association and provided for $500 in possible assessment fees. In this respect, the Association was provided for under the plan for pre-petition assessment fees. However, any liability that may be incurred by a debtor for post-petition homeowners assessments is not discharged by the bankruptcy proceeding. *Rink v. Timbers Homeowners Assoc.*, 87 B.R. 653, 654 (D.Colo.1987). This rule was adopted in the Northern District of Illinois in a Chapter 13 proceeding, and is properly applied to Chapter 7 proceedings such as the case at bar. See *In re Harvey*, 88 B.R. 860, 863 (N.D.Ill.1988).

The bankruptcy court relied upon *In re Baldwin–United Corp.*, 55 B.R. 885 (S.D. Ohio 1985), to defeat the Association's arguments. "This court recognizes the public policy supporting many bankruptcy rules which holds in high regard the debtor's right to a "fresh start," without the threat of lingering claims riding through the bankruptcy." 55 B.R. at 898. However, it is difficult, if not impossible, to extend this interest to debts accrued post-petition. Therefore, bankruptcy public policy cannot be used to defeat post-petition claims against a debtor.

This court finds also that sound authority supports a conclusion that the debt is owed by the debtor personally. As noted in the previous order, the case of *In re Stern*, 44 B.R. 15 (D.Mass.1984) allowed the Association a lien for common expenses accrued after the filing of the Chapter 7 petition. While allowing a lien for the post-petition amounts, the court did not discuss liability of the debtor personally. However, in *In re Harvey*, the bankruptcy court in this district permitted an Association to pursue a claim for a personal deficiency judgment in state court. The court found that the debtor's obligation to pay proper assessments and charges continued so long as she held the unit. 88 B.R. at 863. Debtors in this case are responsible for post-pe-

tition assessment fees on Unit 166 in accordance with the Declaration and By-Laws of the Association. Association is not in violation of the discharge by virtue of pursuing this debt against the Debtors personally.

Secondly, Debtors' obligation to pay post-petition assessments is not thwarted by facts indicating that Debtors did not actually live in Unit 166 during the period in question. Unit 166 was an asset of the Debtors' estate until such time as it was abandoned by the Trustee. When the Trustee relieves the estate of property that is of inconsequential value, the Trustee divests control of the property back to the debtor. *In re Strelsky,* 46 B.R. 178 (E.D. Va.1985). The unit involved in this case was abandoned in a no-asset report entered by the Trustee on November 7, 1983. Therefore, from the time the Trustee abandoned the condominium to the time of the sheriff's sale, the property was in the control of the Debtors.

The bankruptcy court mistakenly places the focus on "actual possession." The better view is that expenses flow from property ownership, not property occupancy. Debtors are the owners of Unit 166 and cannot be relieved of expenses relating to ownership simply by choosing to move elsewhere. A proper analogy can be made to a leasehold estate. A leasee is not relieved from the duty to pay rent by moving out. In *In re Horton,* 87 B.R. 650 (D.Colo.1987), the court held that post-petition homeowners assessments are not discharged by a bankruptcy proceeding and the debtor remains personally liable for said assessments as long as title remains with the debtor. This rule was later refined to specify that while the condominium remains an asset of the estate, the estate alone is responsible for any post-petition condominium assessments which arise during administration of the estate. *Rink v. Timbers Homeowners Assoc.,* 87 B.R. at 654. The court went on to say that:

> If the Trustee elects to abandon this asset or if the estate is closed without administration of this asset, the property would then revert to the control of the Debtor and she would at that time become obligated for any assessments incurred thereafter, unless she exercises the remedy suggested in the Horton case, to wit: the conveyance of the property to the mortgagee.

*Id.* Clearly, the debtors in this case are responsible for assessments due between the date the no-assets report was filed, November 7, 1983, and the day of the sheriff's sale, December 13, 1984. It is not clear from the record to what degree Debtors enjoyed use and occupancy of Unit 166, but it is clear that the property was not conveyed back to the mortgagee and was still in the legal possession of the debtor. No one besides the debtor was entitled to use and enjoyment of Unit 166 during this period. Therefore, the proper party to bear the costs accrued incidental to condominium ownership is the Debtors.

Finally, in light of this court's ruling, a finding of contempt and or sanctions in favor of Debtors and against the Association is improper.

## CONCLUSION

The Memorandum Opinion and Order of the bankruptcy court entered in this matter on April 21, 1988 is reversed. The case is remanded to the bankruptcy court for the sole purpose of determining the amount of money due on the post-petition assessments due and reasonable attorneys fees consistent with this opinion.

It is so ordered.