**In re Joann KING, Debtor.**

**Joann KING, Movant,**

v.

**CHERRYWOOD RESIDENTS ASSOCIATION, INC., Steven Greenfeld, Trustee, Respondents.**

**Bankruptcy No. 96–1–7368–PM.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

May 7, 1997.

Thomas Griffin, Hyattsville, MD, for Movant/Debtor.

Tamara Stoner, Bethesda, MD, for Respondent Cherrywood Residents Ass'n.

Steven Greenfeld, Washington, DC, trustee.

## MEMORANDUM OF DECISION

### (Motion to Avoid Lien)

PAUL MANNES, Chief Judge.

Before the court for decision is debtor's Amended Motion to Avoid Lien of the Cherrywood Residents Association, Inc. ("Cherrywood"), and Cherrywood's opposition. The parties submitted the following Joint Stipulation of Facts and requested that the court decide the matter without a hearing.

### JOINT STIPULATION OF FACTS

Debtor, JOANN KING, and Respondent, CHERRYWOOD RESIDENTS ASSOCIATION, INC., (the "Association") by and through their attorneys, hereby file this Joint Stipulation of Facts:

### STATEMENT OF FACTS

1. That on or about March 23, 1990, Debtor, JOANN KING, purchased property located at 7721 Michele Court, Landover, Maryland ("Subject Property") which is more fully described as:

Lot numbered Three (3), in a subdivision known as and called "LOTTSFORD TOWNHOUSES", as per plat thereof filed among the Land Records of Prince George's County, Maryland in Plat Book N.L.P. 95, Plat 19.

2. That by taking title to the Subject Property, Debtor became subject to the Declaration of Covenants, Conditions and Restrictions (the "Declaration") of the Association recorded on or about September 26, 1977, at Liber 4824, folio 645, et seq. amongst

the Land Records for Prince George's County, Maryland which Declaration contains a covenant to pay maintenance assessments.

3. That Debtor further agreed to the terms of default set forth in both Maryland law as well as the Respondent Association's documents. In particular, Debtor was aware that if she failed to pay the requisite assessments timely as required, the Association could file a Statement of Lien ("Lien") against the Subject Property in accordance with both the Association's documents as well as the Maryland Contract Lien Act.

4. That in December 1994, Respondent Association advised counsel of Debtor's default in payment of homeowners association fees and requested counsel to send a Notice of Intention to Create a Lien ("Notice") to Debtor demanding immediate payment of outstanding association fees and late fees owned for the total amount of One Thousand Six Hundred and 80/100 Dollars ($1,600.80). Failure to pay the amount demanded would result in the filing of a Statement of Lien against the Subject Property.

5. That on December 22, 1994, Debtor was served with Notice advising her of the Association's intent to file a lien for unpaid fees against the Subject Property if she did not pay the amount owed within Thirty (30) days of the date served.

6. That Debtor did not pay the amount stated in the Notice which resulted in the filing of the subject Statement of Lien against the Subject Property in the Land Records of Prince George's County on March 20, 1995.

7. That at least one (1) year after the lien was filed, Debtor filed her petition for relief under Chapter 7 and Steven Greenfeld was appointed the Chapter 7 Trustee and became Trustee of Debtor's estate.

\* \* \* \* \* \*

Debtor filed this bankruptcy case under Chapter 7 on September 10, 1996. Debtor valued her condominium unit at $89,000 on Schedule A and showed that the property

was subject to a deed of trust securing an obligation owed to the Department of Housing and Urban Development in the amount of $117,000 on Schedule D. She claimed an exemption of $2,500 in the condominium. Debtor scheduled an unsecured nonpriority claim in the amount of $1,968.66 held by Cherrywood on Schedule F.

## ISSUE PRESENTED

The issue presented is whether debtor can avoid the homeowner's association Statement of Lien filed March 20, 1995, and recorded among the Land Records of Prince George's County, Maryland. Debtor's motion is based upon 11 U.S.C. § 522(f)(1)(A) that provides:

**§ 522. Exemptions.**

(f) (1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien. . . .

11 U.S.C. § 522(f)(2)(A) provides:

(f) (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Cherrywood contends that the lien at issue is a statutory lien, a defined term under the Bankruptcy Code,[1] and not a judicial lien,

---

**1.** **11 U.S.C. § 101(53)** "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or

another defined term.[2] Because the lien in question was created by filing the Statement of Lien in the Clerk's office and not by the means described in 11 U.S.C. § 101(36), the lien is not a judicial lien and, therefore, is not susceptible of avoidance by debtor under § 522(f).

Cherrywood's condominium lien was created pursuant to the Maryland Contract Lien Act, Md. Real Prop.Code Ann., §§ 14–201 et seq. (1974).[3] Debtor's obligation to pay maintenance assessments is found in Article IV, Section 1, of the Declaration of Covenants, Conditions and Restrictions recorded among the Land Records of Prince George's County, Maryland in Liber 4824, folio 645, 648 (Respondent's Exhibit 1):

> *Section 1. Creation of the Lien and Personal Obligation of Assessments.* The Declarant, for each Lot owned within the Properties, hereby covenants, and each Owner of any Lot by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: (1) annual assessments or charges, and (2) special assessments for capital improvements, such assessments to be established and collected as hereinafter provided. The annual and special assessments, together with interest, costs, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with interest, costs, and reasonable attorney's fees, shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due. The personal obligation for delinquent assessments shall not pass to his successors in title unless expressly assumed by them.

Article IV, Section 8, folio 645, 648, states that Cherrywood is entitled to establish and enforce the lien:

> *Section 8. Effect of Nonpayment of Assessments; Remedies of the Association.* Any assessment not paid within thirty (30) days after the due date shall bear interest from the due date at the rate of 6 percent per annum. The Association may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against the property. No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or abandonment of his Lot.

Debtor bought the condominium subject to the Declaration of Covenants. She fell behind in payment of her proportionate share of common expenses. Cherrywood caused a Statement of Lien to be filed in the Land Records on March 20, 1995, after compliance with the statutory prerequisites (Respondent's Exhibits 2, 3, 4).[4]

## DISCUSSION

The court will begin with the following comment from a leading text:

**§ 8–25. Determining if the Lien is Within the Scope of Section 522(f)**

Only two kinds of liens are covered by section 522(f) and avoidable thereunder by the debtor: a judicial lien on any kind of property, and a nonpossessory, non-purchase-money security interest in certain goods.

A judicial lien is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." It is nonconsensual and involuntary, that is, not dependent on agreement, and arises from judicial action. Good examples are judgment liens and liens of garnishment.

---

not such interest or lien is made fully effective by statute.

2. **11 U.S.C. § 101(36).** "judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

3. **14–201. Definitions.**
    (b) *Contract.—* (1) "Contract" means a real covenant running with the land or a contract

recorded among the land records of a county or Baltimore City.
    (2) "Contract" includes a declaration or by-laws recorded under the provisions of the Maryland Condominium Act.

4. The procedure for the creation of a lien when an association member fails to make condominium payments is set out in Md. Real Prop.Code Ann. § 14–203 (1974).

A lien that arises solely by force of statute (that is, without the need for judicial action) on specified circumstances or conditions is a statutory lien rather than a judicial lien and is altogether beyond section 522(f). Good examples are tax liens and an attorney's statutory lien. Whether a lien is judicial or statutory is determined by how the lien arises. If it arises without judicial action it is a statutory lien even though it is enforced through judicial proceedings; if it arises only upon judicial action it is a judicial lien even though it is based on a statute. A lien that arises solely by force of common law or equity is not a statutory lien unless for rent, but neither is it a judicial lien or other interest within the scope of section 522(f).

D.G. Epstein, S.H. Nickles and J.S. White, *Bankruptcy*, § 8–25 (1992).

Other courts dealing with the proposition at hand—the avoidance of condominium liens—conclude that condominium liens procured under statutes similar to that used to procure the lien at issue are properly characterized as statutory liens. The United States Bankruptcy Court for the District of Massachusetts held that a condominium lien arising under a Massachusetts statute was a statutory lien, notwithstanding the requirement of judicial action to enforce the lien. *In re Stern*, 44 B.R. 15 (Bankr.D. Mass.1984). In *Stern*, the debtor sought to avoid the lien as a preferential transfer pursuant to 11 U.S.C. § 522(h) and exempt the property. The lien arose pursuant to a Massachusetts statute similar to the previously cited provisions of the Maryland Real Property Act. The applicable Massachusetts statute provides: "The unit owner's share of the common expenses shall constitute a lien upon his unit and shall be enforced in the manner provided in section five of chapter 254." Mass. Gen. L. ch. 183A, § 6(c). The court noted that:

"The association's lien for common expenses is solely a creature of statute, similar to other types of liens created by operation of statute. (Statutory citations omitted.) The requirement of a judicial action to enforce the lien and establish its particular priority does not transform its essential character to a judicial lien; the

existence of the lien is not dependent on judicial action. *See In Re Ribeiro*, 7 B.R. 359, at 361 (Bankr.D.Mass.1980); *In Re Riverfront Food and Beverage Corp.*, 29 B.R. 846 (Bankr.E.D.Mo.1983). In light of the nature of the lien under Massachusetts law, I find that the trustee's lien for common expenses is a statutory lien as that term is defined in the Bankruptcy Code.

*In re Stern*, 44 B.R. 15, 18. Similarly, in the case of *In re Johnson*, 108 B.R. 81 (Bankr. W.D.Pa.1989), the United States Bankruptcy Court for the Western District of Pennsylvania held that a condominium lien was not avoidable under 11 U.S.C. § 522(f)(1). The condominium lien arose pursuant to a Pennsylvania law that provided:

§ 3315. Lien for assessments

(a) General rule—The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate.

\*      \*      \*      \*      \*      \*

(c) Notice and perfection of lien—Subject to the provisions of subsection (b), recording of the declaration constitutes record notice and perfection of the lien.

68 Pa. Cons.Stat. Ann. § 3315.

In the case of *In re Nentwick*, 79 B.R. 145, 146 (Bankr.N.D.N.Y.1987), debtor attacked the condominium's lien both as a lien impairing an exemption under § 522(f) and because it allegedly arose because of his involvency. In the latter case, debtor urged avoidance under 11 U.S.C. § 545(1)(D). The court made short shrift of both arguments pointing out that even the debtor "recognized the statutory basis of the lien, rendering Code § 522(f) patently inapplicable in this proceeding." 79 B.R. at 146. Section 545 was likewise inapplicable, because as the court pointed out, "it was merely coincidence that the debtor was insolvent at the time Village Green's lien was perfected...." *Ibid.* The court explained that this was not a case where the lien would not have arisen but for the insolvency.

Accordingly, the court finds that the condominium lien obtained pursuant to the applicable subject provisions of Maryland law is not a judicial lien as defined under the Bankruptcy Code. Therefore, Debtor may not avoid the condominium lien under 11 U.S.C. § 522(f)(1). This result is consistent with the policy underlying the Supreme Court's holding in *Johnson v. Home State Bank*, 501 U.S. 78, 83–86, 111 S.Ct. 2150, 2153–55, 115 L.Ed.2d 66 (1991) that a bankruptcy discharge does not extinguish a secured creditors right to seek redress against property encumbered by the security interest. The Court stated "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*" *See also, In re Thompson*, 182 B.R. 140, 154 (Bankr.E.D.Va.1995). The lien obtained here is a lien against the property, not the debtor. Md. Real Prop.Code Ann., §§ 14–201 and 14–203 (1974). Further, the provisions of Maryland law allow lien holders to enforce the liens by foreclosure in the same manner as foreclosure of mortgages and deeds of trust. Md. Real Prop.Code Ann., § 14–201 (1974). Whether or not debtor is entitled to a discharge of the debt owed to respondent, the respondent retains the right to proceed against the property. In keeping faithful to the longstanding policy articulated in *Johnson*, the respondent should be allowed this opportunity.

Finally, while the issue was not argued, the law is settled that the obligation to pay condominium fees continues after the debtor's discharge. See *River Place East Housing Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (C.A.4 1994), *cert. denied,* 513 U.S. 874, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994); *In re Whitten*, 192 B.R. 10, 15–16 (Bankr. D.Mass.1996) ("The financial obligations of a unit owner are covenants running with the land.").

This result is in harmony with the general scheme of bankruptcy. Had Cherrywood sought and obtained an in *personam* judgment against the debtor, enforcement of debtor's personal liability on that judgment would have been barred by the discharge of 11 U.S.C. § 524(a).

In conclusion, the subject lien is not a judicial lien. Therefore, it is not subject to avoidance under 11 U.S.C. § 522(f). Neither does the lien fall into any category of statutory lien that would subject it to avoidance under 11 U.S.C. § 545.

An appropriate order will be entered.