**In re Leana C. TURNER, Debtor.**

**Bankruptcy No. 88C–05093.**

United States Bankruptcy Court,
D. Utah.

July 7, 1989.

James R. Blakesley, Hintze, Brown, Faust, Blakesley & Hanson, Salt Lake City, Utah, for David Abbott and Meadowbrook Homeowners Ass'n.

Raymond D. Wixom, Rulon T. Burton & Associates, Salt Lake City, Utah, for debtor.

## MEMORANDUM DECISION

GLEN E. CLARK, Chief Judge.

The matter presently before the court is an Order to David Abbott and Meadowbrook Homeowners Association to appear and show cause as to why they should not be held in contempt of court and sanctioned for violation of the discharge provision of 11 U.S.C. § 524. Also before the court are countermotions for Rule 11 sanctions. A hearing was held on May 2, 1989. Raymond D. Wixom appeared on behalf of the debtor, Leana C. Turner; and James R. Blakesley appeared on behalf of David Abbott and Meadowbrook Homeowners Association. Counsel presented argument, and the court took the matter under advisement. The court has carefully considered and reviewed the arguments of counsel and the memoranda and affidavits submitted by the parties and has made an independent review of the pertinent authorities. Now being fully advised, the court renders the following decision.

## BACKGROUND

The following is a summary of the relevant background which has not been challenged or disputed by either party.

1. In 1981 the debtor, Leana Carol Turner, acquired an ownership interest in a condominium unit located at 4322 South 1195 West, Murray, Utah, which included an undivided interest in the common areas and facilities appertaining to that unit. *See* Utah Code Ann. § 57–8–3(8), (21) (renumbered in 1987 as § 57–8–3(28), (8)); Utah Code Ann. § 57–8–7(1).

2. When the debtor acquired the condominium, she became obligated to the Meadowbrook Homeowners Association ("Meadowbrook") to pay her proportionate share of the common expenses. That obligation arises from the condominium declaration and bylaws and the Condominium Ownership Act, Utah Code Ann. §§ 57–8–1 to 57–8–36.

3. In approximately July 1988, tenants occupying debtor's condominium vacated the premises. Shortly thereafter, debtor abandoned the condominium and attempted to convey her interest in the property to Mountain States Mortgage, the mortgagee.

4. On September 1, 1988, the debtor filed for relief under Chapter 7 of the Bankruptcy Code, instituting the above-captioned case. The debtor listed Meadowbrook as a creditor and also listed the condominium on her schedules.

5. On September 30, 1988, the debtor filed a Statement of Intent with Respect to Collateral, indicating her intent to surrender the condominium to Mountain States Mortgage.

6. The debtor did not enter into any reaffirmation agreement with Meadowbrook with regard to debtor's obligation to pay common expenses.

7. The Chapter 7 trustee did not assume any contract with Meadowbrook.

8. On December 21, 1988, the debtor obtained a discharge. The trustee had filed a no-asset report which was approved by the court. Inasmuch as the trustee did not administer the condominium prior to the closing of the case, the condominium was abandoned to the debtor.

9. On or about January 26, 1989, David Abbott, as property manager of Meadowbrook, initiated a state court proceeding against Ms. Turner to collect unpaid common expenses which were assessed postpetition.

## DISCUSSION

The dispositive issue in this matter is whether or not the common expenses assessed postpetition by Meadowbrook are a debt for which the debtor has been released from personal liability as a result of the debtor's discharge in this Chapter 7 case.

■ Pursuant to the condominium declaration and bylaws [1] and the Condominium Ownership Act, Utah Code Ann. §§ 57–8–1 to 57–8–36, debtor's obligation to pay common expenses arose when the debtor acquired an ownership interest in the condominium. Utah Code Ann. § 57–8–20(1) provides in part:

> Every unit owner shall pay his proportionate share of the common expenses. Payment shall be in the amounts and at the times determined by the management committee in accordance with the terms of the declaration or the bylaws.

On the date of petition, Meadowbrook had a matured claim against the debtor for common expenses which were assessed prepetition but remained unpaid. Meadowbrook also had an unmatured, contingent claim against the debtor for her proportionate share of common expenses coming due in the future. Debtor's obligation to pay common expenses, and thus Meadowbrook's claim against the debtor for those expenses, arose when the debtor purchased the condominium; and debtor's obligation

**1.** The parties referred to the condominium declaration and bylaws which, according to the Condominium Ownership Act, Utah Code Ann. §§ 57–8–1 to 57–8–36, contain covenants, conditions, and restrictions relating to the condominium project and provisions concerning payment of common expenses. Specifically, Utah Code Ann. § 57–8–8 provides: "Each unit owner shall comply strictly with the covenants, conditions and restrictions as set forth in the declaration or in the deed to his unit, and with the bylaws and/or house rules...." Utah Code Ann. § 57–8–10(1) indicates that "[p]rior to the con-

veyance of any unit in a condominium project, there shall be recorded a declaration containing covenants, conditions, and restrictions relating to the project." Utah Code Ann. § 57–8–16 states that the bylaws may provide for payment of common expenses and the manner of collecting those expenses. Further, Utah Code Ann. § 57–8–10(8) provides that the declaration and bylaws "shall be duly executed and acknowledged by all of the owners"; and Utah Code Ann. § 57–8–2 requires owners to duly execute and record a condominium declaration.

continued for as long as the debtor owned the unit. The debtor, however, obtained a discharge under Chapter 7 which discharged the debtor from all debts that arose before the petition date. *See* 11 U.S.C. § 727(b). A debt, as defined in 11 U.S.C. § 101(11), means "liability on a claim." A claim, as defined in 11 U.S.C. § 101(4), is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *See* 2 Collier on Bankruptcy ¶¶ 101.04 at 101–20 to –25 ("claim" under the Code is given the broadest interpretation), 101.11 at 101–44 to –46 (terms "debt" and "claim" are co-extensive, as specified in the Code's legislative history) (15th ed. 1989). Thus, the debtor's personal liability on Meadowbrook's right, albeit unmatured or contingent, to payment of common expenses was clearly discharged in this case. The debtor did not enter into any reaffirmation agreement with Meadowbrook to reaffirm her obligation to pay the common expenses; the Chapter 7 trustee did not assume any agreement. The debtor vacated the premises prior to the Chapter 7 petition and did not continue to receive the benefits of living in the condominium.[2] Indeed, prior to filing bankruptcy the debtor attempted to convey her interest in the condominium to the mortgagee. Under these circumstances, as a result of the debtor's discharge, the court believes that Meadowbrook is limited to pursuing its lien rights against the condominium unit to satisfy the indebtedness. Utah Code Ann. § 57–8–20 states in part:

> (2) ... If any unit owner fails or refuses to make any payment of the common expenses when due, that amount constitutes a lien on the interest of the owner in the property, and upon the recording of notice of lien by the manager or management committee it is a lien upon

the unit owner's interest in the property prior to all other liens and encumbrances, recorded or unrecorded, except:

> (a) tax and special assessment liens on the unit in favor of any assessing unit or special improvement district;
>
> (b) encumbrances on the interest of the unit owner recorded prior to the date such notice is recorded which by law would be a lien prior to subsequently recorded encumbrances.
>
> ....
>
> (4) The lien for nonpayment of common expenses may be enforced by sale or foreclosure of the unit owner's interest by the manager or management committee.

Unfortunately for Meadowbrook, that remedy is apparently unavailing in this case. Counsel for Meadowbrook represented to the court that the prior encumbrances exceed the value of the property. This concern, however, does not change the court's opinion that the debtor's personal obligation to pay the common expenses has been discharged.

The court is aware that Utah Code Ann. § 57–8–20(2) provides that "[t]he amount of common expenses assessed against each unit is a debt of the owner at the time the assessment is made and is collectible as such." The court notes, however, that federal bankruptcy law, not state law, governs when a debt or claim arises for purposes of determining whether or not a debt is discharged in a Chapter 7 case. Meadowbrook's postpetition assessments were merely the periodic maturing of Meadowbrook's prepetition claim and debtor's prepetition obligation, resulting in common expenses becoming due and payable.

The court's opinion is aligned with the following cases: *In re Elias*, 98 B.R. 332 (N.D.Ill.1989); *In re Behrens*, 87 B.R. 971 (Bankr.N.D.Ill.1988), *aff'd*, Nos. 88–C–8855, 83–B–4896 (N.D.Ill. Mar. 8, 1989) (1989 WESTLAW 47409, FBKR–CS Database);

---

**2.** Had the debtor not filed bankruptcy and received a discharge, the court notes that under state law the debtor would have remained liable for the common expenses notwithstanding her vacation and attempted surrender of the premises. Utah Code Ann. § 57–8–26 provides: "No

unit owner may exempt himself from liability for his contribution towards the common expenses by waiver of the use or enjoyment of any of the common areas and facilities or by abandonment of his unit."

*In re Rosteck,* 85 B.R. 73 (Bankr.N.D.Ill. 1988), *aff'd,* 99 B.R. 400 (N.D.Ill.1989) (on motion for reconsideration, district court vacates its previous ruling (*In re Rosteck,* 95 B.R. 558 (N.D.Ill.1988)) which had reversed the bankruptcy court), *In re Montoya,* 95 B.R. 511 (Bankr.S.D.Ohio 1988) (postpetition assessments were a violation of the discharge injunction of 11 U.S.C. § 524 inasmuch as debtor had abandoned unit); and *Smith v. Smith (In re Smith),* 81 B.R. 888 (Bankr.W.D.Mich.1988) (neither contingency of debts nor immaturity of obligations takes obligations out of definitions of "debt" and "claim").

The court is aware that there are cases generally out of the District of Colorado that hold that postpetition assessments of common expenses by a homeowners association are postpetition debts which are not discharged in a Chapter 7 case. *See In re Rink,* 87 B.R. 653 (Bankr.D.Colo.1987); *In re Horton,* 87 B.R. 650 (Bankr.D.Colo. 1987); *see also In re Lenz,* 90 B.R. 458, 460 (Bankr.D.Colo.1988) (dictum in Chapter 11 case discusses the Chapter 7 cases from the District of Colorado); *In re Harvey,* 88 B.R. 860 (Bankr.N.D.Ill.1988) (Chapter 13 case); *Alexandria Knolls West Condominium Homes Council of Co-Owners v. Strelsky (In re Strelsky),* 46 B.R. 178 (Bankr.E.D.Va.1985); *Stern v. Munroe (In re Stern),* 44 B.R. 15 (Bankr.D.Mass.1984). The court is not persuaded to follow this line of cases.[3]

The court finds that David Abbott and Meadowbrook Homeowners Association have violated the discharge injunction of 11 U.S.C. § 524. Therefore, David Abbott and Meadowbrook Homeowners Association shall be ordered to discontinue their efforts to collect common expenses from the debtor. The court does not believe that Mr. Abbott's or Meadowbrook's violation has been willful or deliberate and therefore will not award sanctions.

## COUNTERMOTIONS FOR RULE 11 SANCTIONS

The court does not believe that Rule 11 sanctions are appropriate in this case.

Inasmuch as there is legal authority supporting each of the parties' position, the court believes that counsel for the debtor applied for and supported the Order to Show Cause in good faith and also that counsel for Mr. Abbott and Meadowbrook objected in good faith. Further, the court does not believe that the papers filed by the parties were interposed for an improper purpose. Accordingly, the countermotions for Rule 11 sanctions will be denied.

---

**3.** The court notes that even if this line of cases were followed, the Chapter 7 estate, not the debtor, would be liable for the pre-discharge postpetition assessments of common expenses inasmuch as the Chapter 7 trustee did not abandon the condominium unit prior to discharge.