In re Christian J. AFFELDT and
Susan M. Affeldt, Debtors.

Christian J. AFFELDT, Plaintiff,

v.

WESTBROOKE CONDOMINIUM AS-
SOCIATION d/b/a Meadowcreek
Condominiums, Defendant.

Bankruptcy No. 4–90–7297.
Adv. No. 4–93–351.

United States Bankruptcy Court,
D. Minnesota.

March 7, 1994.

James B. Fleming, Bernick & Lifson, Minneapolis, MN, for plaintiff.

Chad A. Johnson, Van House & Iliff, PA, Edina, MN, for defendant.

*FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 13th day of January, 1994, on the plaintiff's motion for summary judgment and the defendant's motion for summary judgment. Ap-

---

pearances were as follows: James Fleming for the plaintiff, Christian Affeldt ("Debtor"); and Chad Johnson for the defendant, Westbrooke Condominium Association d/b/a Meadowcreek Condominiums ("Westbrooke").

The Court, having considered the pleadings in the action, memoranda of law, all affidavits, and the arguments of counsel, concludes that Westbrooke's motion for summary judgment should be denied and Affeldt's motion for summary judgment should be granted, and makes the following:

## FINDINGS OF FACT

1. Debtor, together with his former wife Susan Affeldt ("Susan") filed a petition for relief under chapter 7 of the Bankruptcy Code on December 18, 1990. The bankruptcy schedules listed Westbrooke as a creditor.

2. On the same day that they filed their petition for relief, Debtor and Susan were divorced. Pursuant to the Decree of Dissolution entered by Hennepin County District Court on December 1990 ("Divorce Decree"), Susan was awarded sole and exclusive ownership of their property located at 952 Westbrooke Way No. 8, Hopkins, Minnesota, and legally described as Unit 155–165, Condominium Number 246, Westbrooke Condominiums ("the property").

3. While the Divorce Decree terminated the plaintiff's interest in the property, both the Debtor and Susan are currently listed as record owners.

4. Debtor has not resided on the property nor has he received any benefits from the property since December 18, 1990.

5. Sometime prior to the Debtor's discharge in March 1991, Westbrooke contacted Debtor seeking information regarding his intention to pay the post-petition condominium assessments.

6. Subsequently, Debtor's attorney, who was not involved in and was unaware of the bankruptcy, suggested that Debtor allow Westbrooke to foreclose on its lien for unpaid condominium assessments. According to counsel, this would allow Debtor to redeem the property after Susan's interest had been foreclosed.

7. Westbrooke's counsel subsequently demanded that Debtor prepay $2,500 in attorney's fees and costs for Westbrooke's legal expenses in the foreclosure. Debtor refused. On April 12, 1993, Westbrooke initiated civil action in Hennepin County District Court seeking to collect the post-petition assessments.

8. On July 14, 1993, Hennepin County District Court entered default judgment against Debtor and Susan in the amount of $6,694.40 ("Judgment").

9. According to the Findings of Fact, Conclusions of Law and Order for Judgment, the court found that Debtor and Susan were "personally liable for certain dues and assessments" pursuant to the Declaration of Covenants, Restrictions and Easements of the Association ("Declaration").[1] The court also found that Westbrooke was entitled to recover legal fees, costs and expenses in collection of the sums due and owing from the defendants from December 1991 in the amount of $3,067.83. Finally, the court held that Debtor and Susan breached their obligation to Westbrooke by failing to pay the assessments pursuant to the Declaration.

10. On the same date, Westbrooke served Debtor with a notice of garnishment proceedings.

11. On August 23, 1993, Debtor initiated this adversary proceeding seeking: (1) an order for injunctive relief; (2) a determination that the debt sued upon in state court had been discharged; and (3) actual damages resulting from the acts of Westbrooke, including attorney's fees.

12. By Stipulation dated September 2, 1993, Westbrooke agreed to the entry of an order temporarily enjoining Westbrooke from collecting on the Judgment. By Order dated September 2, 1993, this Court temporarily enjoined Westbrooke from engaging in further attempts to collect the debt arising from the Judgment.

---

1. The parties have not submitted to the Court a copy of the Declaration. It is not disputed that the Declaration and other condominium agreements were executed pre-petition.

13. Debtor now moves for summary judgment seeking to have the debt for post-petition condominium assessments declared discharged. Westbrooke also moves for summary judgment seeking to have the debt declared as not discharged and also requesting attorney's fees.

14. On January 13, 1994, the Court held a hearing on the motions to dismiss. After hearing the arguments of counsel, the Court instructed the parties to further brief the issues in light of the Eighth Circuit's decision in *Bush v. Taylor*, 912 F.2d 989 (8th Cir. 1990).

### CONCLUSIONS OF LAW

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056. Federal Rule 56 provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The parties agree that there are no facts in dispute and that this decision turns solely on a question of law.

The precise issue is whether the obligation to pay post-petition condominium assessments that arise out of a pre-petition contract is a debt discharged under § 727(b) of the Code. This section provides: "a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of this order for relief under this chapter...." Therefore, resolution of this issue hinges on whether the obligation to pay the post-petition assessments was a pre-petition debt. The Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). The definition of "claim" is intended to be given the broadest possible interpretation.

*Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985).

The issue of whether the obligation to pay post-petition condominium assessments is a pre-petition debt is not novel. In fact, numerous courts have addressed the issue and arrived at varying results.

Several cases have reasoned that the obligation to pay post-petition condominium assessments was not a pre-petition debt since the debtor did not become obligated to pay until the assessment actually became due and payable. Accordingly, the debt was not discharged. *See, e.g., In re Raymond,* 129 B.R. 354, 363 (Bankr.S.D.N.Y.1991); *In re Lenz,* 90 B.R. 458, 460 (Bankr.D.Colo.1988); *In re Harvey,* 88 B.R. 860, 862 (Bankr.N.D.Ill. 1988); *Horton v. Beaumont Place Homeowners Ass'n, Inc. (In re Horton),* 87 B.R. 650, 652 (Bankr.D.Colo.1987); *Rink v. Timbers Homeowners Ass'n I, Inc. (In re Rink),* 87 B.R. 653, 654 (Bankr.D.Colo.1987); *Alexandria Knolls West Condominium Homes council of Co-owners v. Strelsky (In re Strelsky),* 46 B.R. 178, 180–81 (Bankr.E.D.Va. 1985). Many such cases, however, seem to reach this conclusion while struggling with the issue of how to preserve the debtor's right to remain in possession of the premises while not granting the debtor the benefit of a discharge. These courts apparently reasoned that the only equitable solution would be to deny the discharge on the obligation to pay the post-petition assessments. *See* David Epstein et al., Bankruptcy § 7–7, at 294 (1992). This result may have been driven less from the plain meaning of the Code, and more by the desire to prevent the debtor "from having his cake and eating it too."

More recently, however, courts have focused on the plain meaning of the Code and specifically § 101(5). These cases reason that the obligation to pay post-petition assessments arising out of a pre-petition contract is discharged because it is a contingent, unmatured liability that falls within the broad definition of "claim." As such, it is irrelevant when the actual payment comes due. *See, e.g., In re Rosteck,* 899 F.2d 694, 696–97 (7th Cir.1990); *In re Elias,* 98 B.R. 332, 334–36 (N.D.Ill.1989); *Cohen v. North*

*Park Parkside Community Ass'n (In re Cohen)*, 122 B.R. 755, 758 (Bankr.S.D.Cal.1991); *In re Turner*, 101 B.R. 751, 753–54 (Bankr. D.Utah 1989); *In re Montoya*, 95 B.R. 511, 513 (Bankr.S.D.Ohio 1988); *Behrens v. Woodhaven Ass'n (In re Behrens)*, 87 B.R. 971, 975 (Bankr.N.D.Ill.1988).

As some commentators suggest, and I agree, these latter cases are correctly decided. *See* Epstein, § 7–7, at 294. Debtor's obligation to pay the post-petition assessments was discharged in his bankruptcy. Westbrooke is simply trying to enforce a personal obligation of the Debtor based upon a pre-petition contract. Once the Debtor became personally obligated to pay the assessments, regardless of when the actual payment was due, Westbrooke was a holder of a contingent, unmatured claim under § 101(5). *See Rake v. Wade*, —— U.S. ——, ——, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424 (1993) ("where the statutory language is clear, our 'sole function ... is to enforce it according to its terms.'") (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)).

I am not deciding, and not being asked to decide, whether Westbrooke's lien arising under state law survives the Debtor's bankruptcy and is still enforceable. Nor am I deciding whether Westbrooke has any other remedies. I do note, however, that Debtor did not reside on the property post-petition and it is therefore unlikely that he is responsible for the assessments under a more equitable theory such as restitution. All I do decide is that Debtor's personal obligation to pay the post-petition assessments arose pre-petition and was therefore discharged in his bankruptcy.

The Eighth Circuit's decision in *Bush v. Taylor*, 912 F.2d 989 (8th Cir.1990) does not dictate a different conclusion. In *Bush*, a pre-petition divorce decree awarded an ex-spouse, as sole and separate property, one half of the debtor's pension benefits. After the debtor fell into arrears on the payments, the ex-spouse obtained a default judgment entitling her to pension benefits payable once a month for the remainder of her life. Subsequently, the debtor filed a petition for relief under chapter 7. The ex-spouse then objected to the discharge of these payments, contending that the payments were post-petition debt and not subject to the discharge. *Id.* at 990–91.

In affirming the lower court's decision, the Eighth Circuit held that the award created a separate property interest for the ex-spouse, and that the debtor received a portion of the monthly benefit payment as a constructive trustee for the ex-spouse. *Id.* at 992–93. As an alternative basis, the court summarily concluded that the monthly payments of the pension did not become a debt until the payments were due and payable. *Id.* at 993. Accordingly, the payments constituted a post-petition debt and were not discharged. *Id.*

Unlike the present case, the debtor in *Bush* was receiving and then holding his ex-spouse's property, and thus he had a corresponding obligation to *return* the property as he *received* it. Since he received his ex-spouse's property post-petition, the obligation to transfer the property arose post-petition. In the present case, however, the Debtor's personal obligation to pay the condominium assessments arose pre-petition when he entered into a contract with Westbrooke. *See Wilson v. Wilson (In re Wilson)*, 158 B.R. 709, 712 n. 3 (Bankr.S.D.Ohio 1993) (recognizing a distinction when a debtor is actually holding the property of another and is obligated to transfer it); *Stitham v. Stitham (In re Stitham)*, 154 B.R. 1, 4 & n. 10 (Bankr.D.Me.1993) (distinguishing between property rights arising out a divorce decree versus a debtor's personal obligation).

Moreover, unless *Bush* is limited to its facts, it represents a truly distinct deviation from the commonly accepted definition of "claim" and "debt". As Judge Arnold correctly noted in dissent, the majority's reasoning "ignores the Code's plain inclusion of unmatured debts within the definition of dischargeable debts." *Id.* 912 F.2d at 995 (Arnold, J., dissenting). According to Judge Arnold, the debt was an unmatured debt which partially matured each month when the payment actually became due. *Id.* *Bush* has been criticized, not for the result it achieved, nor for its application of construc-

tive trust principles, but rather for its alternative holding regarding whether the claim was discharged. *See, e.g., Justus v. Justus*, 581 N.E.2d 1265, 1270 (Ind.Ct.App.1991) (rejecting *Bush* and holding that pre-petition obligations that are due and payable post-petition are discharged debts); Epstein, § 7–6, at 292–93 (characterizing the *Bush* reasoning that the obligation accrued post-petition as "unpersuasive"). It must be narrowly construed and applied.

Because Debtor's obligation to pay the post-petition condominium assessments was discharged in his bankruptcy, Westbrooke violated the injunctive provisions of § 524 when it made efforts to collect the condominium assessments.

## ORDER FOR SUMMARY JUDGMENT

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. Debtor's motion for summary judgment is GRANTED;

2. Westbrooke's motion for summary judgment is DENIED;

3. Debtor's obligation to pay the post-petition condominium assessments was discharged in his bankruptcy;

4. Westbrooke is permanently enjoined from trying to collect on the Judgment entered and docketed on July 14, 1993 in the amount of $6,694.40, and is permanently enjoined from taking any other action in regards to the post-petition condominium assessments; and

4. Debtor's request for actual damages and attorney's fees for violating the injunction under § 524 is reserved pending an evidentiary hearing that shall be scheduled by the parties.

LET JUDGMENT BE ENTERED ACCORDINGLY.