**In re Richard R. GONZALO, Jr. and Lori M. Gonzalo aka Lori DeSantis, Debtors.**

**Bankruptcy No. 192–15197–260.**

United States Bankruptcy Court, E.D. New York.

June 22, 1994.

---

Eugene E. Zegarowicz, Staten Island, NY, for debtors.

Barnet E. Giventer (Joseph A. D'Amico, of counsel), Staten Island, NY, for Continental at Avon Condominiums.

## DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

Richard and Lori Gonzalo (the "Debtors"), filed a joint Chapter 7 petition on June 17, 1992. At that time, they were the record owners of, and resided in a condominium unit located at 133A Stack Drive, Staten Island, New York (the "Condominium"). Schedule D of Debtors' petition listed Citicorp Mortgage Inc. ("Citibank") as a secured creditor secured by a mortgage affecting the Debtors' interest in the Condominium, and Schedule F listed the Board of Managers of Continental at Avon Condominium (the "Board"), as an unsecured creditor for the sum of $1,804.00. The Debtors' Statement of Intention, required pursuant to section 521(2) of the Bankruptcy Code (the "Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure, listed their interest in the Condominium as property to be surrendered. At the time of their filing, Debtors were in default on the mortgage held by Citibank and were delinquent on the common charges owed to the Board. It is undisputed that at all relevant times, the Board was aware of the Debtors' Chapter 7 petition.

The first meeting of creditors was held on August 20, 1992, and the Chapter 7 Trustee, Gary S. Basso, Esq., filed a "Report of No–Assets" on September 2, 1992. Thereafter, on November 5, 1992, this Court granted Citibank's motion for relief from the automatic stay. Citibank commenced foreclosure proceedings by issuing a summons and complaint. A foreclosure sale is scheduled for July 15, 1994.

The Debtors vacated the Condominium on August 15, 1992 and on or about October 1, 1992, persons unknown to them moved into the Condominium and occupied the premises. The Board does not dispute this occupancy or that the Debtors neither arranged the sublet of the Condominium, nor received any remuneration therefor.[1]

On December 3, 1992, an order of discharge was entered and the case was closed on December 29, 1992. No reaffirmation agreement pursuant to section 524(c) of the Code was signed by the Debtors.

On May 28, 1993, the Board instituted a suit against the Debtors in the Civil Court of the City of New York, Richmond County, to recover $3,089.00 for common charges and late charges for the postpetition period of July 1, 1992 through May 31, 1993, plus $135 per month thereafter pursuant to the covenants, restrictions, and declarations of record relating to the Condominium. In addition, the complaint sought $750.00 for attorneys' fees as also provided for by the covenants. On June 28, 1993, Debtors' counsel moved in the Civil Court to dismiss the action on the grounds that the Debtors were discharged in bankruptcy and further, that the Civil Court lacked jurisdiction in the matter. Moreover, Debtors counterclaimed for damages resulting from the Board's prosecution of the action. On July 16, 1993, the Civil Court entered a decision and order denying the Debtors' motion to dismiss on the grounds that the action concerned a postpetition time period and was not affected by the discharge in bankruptcy.

Thereafter, the Debtors moved this Court for an order pursuant to Rule 4007(b) of the Federal Rules of Bankruptcy Procedure to reopen their case and for an order prohibiting the Board from attempting to recover the postpetition condominium common charges, assessments and other fees, and finding the Board in violation of this Court's order of discharge.[2] This Court granted the Debtors'

---

1. *See* Debtors' Memorandum of Law, dated March 10, 1994. The Board, through its counsel stated that it could not refute the facts set forth in the Debtor's Memorandum of Law. *See* Attorney's Further Affidavit in Opposition, by Joseph A. D'Amico, Esq., of counsel to Barnett Giventer,

Esq., attorney for the Board, sworn to March 23, 1994, at page 1.

2. Section 524 of the Code provides in pertinent part that a discharge:

motion to reopen their case. The Court further directed that the parties appear before it on March 24, 1994 relative to the issues presented. At that hearing and upon the consent of all parties the Court agreed to make a determination of the issues involved without the need of having an adversary proceeding instituted. The Court directed that the parties may submit memorandums of law in support of their respective contentions and it reserved decision as to the same.

Upon consideration of both parties' contentions as set forth in the motion, supporting papers and the opposition thereto, the memorandum of law submitted by the Debtors and the affidavit in opposition thereto, and upon the record taken before this Court on March 24, 1994, and after due deliberation this Court renders the following decision.

## DISCUSSION

The issue before this Court is not novel. However the courts that have addressed the issue have reached various conclusions. *See, e.g., In re Miller,* 125 B.R. 441, 443 (Bankr. W.D.Pa.1991) (discussing various approaches to postpetition common charges).

Some jurisdictions have found that under federal law the postpetition levy of common charges arising from a prepetition condominium agreement is prepetition debt which is extinguished upon the Debtors' Chapter 7 discharge. *See In re Rosteck,* 899 F.2d 694 (7th Cir.1990); *In re Elias,* 98 B.R. 332, 334–36 (N.D.Ill.1989); *Affeldt v. Westbrooke Condominium Ass'n (In re Affeldt),* 164 B.R. 628, 630 (Bankr.D.Minn.1994); *Cohen v. North Park Parkside Community Ass'n (In re Cohen),* 122 B.R. 755, 758 (Bankr.S.D.Cal. 1991); *In re Turner,* 101 B.R. 751, 753–55 (Bankr.D.Utah 1989); *In re Ryan,* 100 B.R. 411, 414–15 (Bankr.N.D.Ill.1989); *Behrens v. Woodhaven Assoc. (In re Behrens),* 87 B.R. 971, 975 (Bankr.N.D.Ill.1988), *aff'd,* 1989 WL 47409 (N.D.Ill. Mar. 8, 1989). These cases focus on the plain meaning of the Bankruptcy Code and conclude that "the obligation to pay

postpetition assessments arising out of a prepetition contract is discharged because it is a contingent, unmatured liability that falls within the broad definition of 'claim.'" *In re Affeldt,* 164 B.R. at 630. This Court well recognizes that "federal bankruptcy law, not state law, governs when a debt or claim arises for purposes of determining whether or not a debt is discharged in a Chapter 7 case." *In re Turner,* 101 B.R. 751 at 754; *In re Cohen,* 122 B.R. 755 at 757; *In re Behrens,* 87 B.R. 971 at 975 (definition of 'debt' for purposes of Bankruptcy Code determined under federal law). However, an analysis of the dischargeability of condominium common charges should not overlook the property interest inherent in the nature of the obligation.

"Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Nobelman v. American Savs. Bank,* — U.S. —, —, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993) (quoting *Butner v. United States* ). Under New York law, "[n]o [condominium] owner may exempt himself from liability for his common charges by waiver of the use or enjoyment of any of the common elements *or by abandonment of his unit.*" N.Y. Real Property Law § 339–x (McKinney 1989) (emphasis added). Thus, it is clear that had the Debtors' bankruptcy filing and subsequent discharge not intervened, the Debtors would have remained liable, under state law, for the common charges, notwithstanding their surrender of the premises. *Id.; see In re Turner,* 101 B.R. at 754, n. 2; *see* N.Y. Real Property Law § 339–x (McKinney 1989).

In the bankruptcy context, the dischargeability of postpetition condominium common charges was thoroughly analyzed under New York's Condominium Act[3] and case law in *In re Raymond,* in which the Bankruptcy Court

---

operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived....

11 U.S.C. § 524(a)(2).

**3.** N.Y. Real Property Law Article 9–B § 339–d to 339–ii (McKinney 1989).

in the Southern District of New York held that a debtor's postpetition common charges, assessments, and late fees were not extinguished by the debtor's discharge. 129 B.R. 354 (Bankr.S.D.N.Y.1991). In *Raymond*, the debtors filed their Chapter 7 petition and continued to occupy the premises through the pendency of their case and the entry of their discharge order, vacating the premises only upon their mortgagee's foreclosure sale. There, Judge Berk found that

> [t]he Debtors' obligation to pay common charges ... satisfies each prong of the three-part test for a covenant running with the land. It is an obligation which not only binds them, but would have bound their assigns and grantees. It is inseparably connected to the ownership of the condominium unit. The obligation as a covenant running with the land, cannot be discharged under Code § 727(b) because this provision discharges claims, not ownership interests. A unit owner's obligation to pay common charges can only be extinguished by termination of the ownership interest itself.

*Id.* at 363; *accord River Place East Housing Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (4th Cir.1994). In *Rosenfeld*, the Fourth Circuit took a similar approach in the context of postpetition cooperative assessments. The court stated that "the obligation to pay assessments is a function of owning the land with which the covenant runs. Thus, [the debtor's] obligation to pay the assessments arose from his continued post-petition ownership of the property and not from a prepetition contractual obligation." Id. at 837. The court acknowledged that although cooperatives and condominiums "involve slightly different types of ownership, ... the analysis of whether the debtor's liability for postpetition assessments is extinguished by the discharge is essentially the same." *Id.* at 837 n. 1.

It is recognized that "[u]nder New York law, we cannot divorce the ownership interest of a condominium unit from the unit owner's inherent obligation to pay for the common charges as they accrue." *Raymond,* 129 B.R. at 363–64. This Court wholeheart-

edly agrees with Judge Berk's well reasoned analysis.

Under New York law, the Debtors' obligation to pay the common charges, special assessments and late fees attached to (and ran with) their ownership of the condominium unit. They are, therefore, liable for all charges accrued during the period of their ownership, excluding the time that the unit constituted property of the bankruptcy estate. The Debtors' liability for postpetition common charges began to accrue when the Chapter 7 Trustee 'abandoned' the condominium unit from the estate by filing a 'no-asset report' in the bankruptcy case. The liability ended when their ownership of the unit terminated by virtue of the foreclosure sale.

*Id.* at 364.

This Court agrees that debtors cannot "continue to own their condominium unit and have the benefit of the upkeep and maintenance on the property while refusing to pay for such benefits." *Id.* at 359. However, in the instant case, it appears that the Debtors only occupied the Condominium for approximately six weeks of the entire period for which the Board seeks to recover common charges and late charges. The Debtors filed their petition on June 17, 1992, clearly stating their intention to surrender the Condominium, which they in fact, did by vacating it on August 15, 1992. The Board seeks to recover $3,089.00 for common charges and late charges for the postpetition period of July 1, 1992 through May 31, 1993, plus $135 per month thereafter. However, the Condominium was property of the bankruptcy estate from the commencement of the case on June 17, 1992, until the Chapter 7 Trustee abandoned it back to the Debtors by filing a "no-asset" report on September 2, 1992. It remains undisputed that persons unknown to the Debtors took possession of the premises on or about October 1, 1992.

Thus, Judge Berk's analysis, adopted here, renders the postpetition common charges and late charges only for the period from September 2, 1992 through October 1, 1992, unaffected by the Debtors' discharge and the Debtors are responsible for payment thereof. The Debtors are not obligated to pay the

amounts sought by the Board for the period of July 1, 1992 through September 1, 1992, inasmuch as the Condominium was property of the bankruptcy estate, and the additional amounts sought by the Board for the period commencing October 2, 1992 and thereafter, as analyzed above, were no longer the Debtors' obligations. The Board is directed to discontinue their efforts to collect the foregoing amounts. The Debtors' request for an order finding the Board in violation of this Court's order of discharge is denied.

## CONCLUSION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2. The common charges and late charges for the period from September 2, 1992 through October 1, 1992, are unaffected by the Debtors' discharge and the Debtors are responsible for payment thereof.

3. The Board is directed to discontinue their efforts to collect the amounts sought for the period of July 1, 1992 through September 1, 1992, and for the period of October 2, 1992 and thereafter.

4. The Debtors' request for an order finding the Board in violation of this Court's order of discharge is denied.

5. In accordance with the foregoing, the attorneys for the Debtors and the Board shall submit to this Court an order setting forth the amount of the common charges and late charges for the period from September 2, 1992 through October 1, 1992, for which the Debtors are responsible.