**In re Lee WHITTEN, Debtor.**

**Bankruptcy No. 92–15640–JNF.**

United States Bankruptcy Court, D. Massachusetts.

Jan. 30, 1996.

David P. Dow, N. Chelmsford, MA.

Harland Smith, Mendon, MA.

### MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the "Motion To Reopen Case" filed by the Debtor, Lee Whitten (the "Debtor"). The Debtor seeks a determination of whether his condominium common area fee obligation was discharged in bankruptcy, as well as an order holding the Governor's Park Condominium Trust (the "Trust") in contempt for its attempts to collect the condominium fees. The Trust filed an opposition to the Motion. On October 11, 1995, the Court conducted a hearing, at which time the parties agreed to file a stipulation of facts and an accounting by November 13, 1995, and the Court took the matter under advisement. In accordance with Fed.R.Bankr.P. 7052, the Court now makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

The Governor's Park Condominium in Winthrop, Massachusetts, was created by master deed on July 10, 1986. The Trust was established to represent the organization of condominium unit owners. On October 22, 1986, the Debtor and another person purchased two units which were then rented to tenants. Both units were encumbered by mortgages. When the Debtor fell into arrears with respect to his common area fee obligations, the Trust attempted, unsuccessfully, to collect rents from the Debtor's tenants in early 1992.

The Debtor filed a voluntary petition under Chapter 7 on June 3, 1992. In his Statement of Intention, he indicated that he intended to surrender both units to BoWest, which held first mortgages on the units that exceeded the values ascribed to them by the Debtor. The Trust was not originally listed as a creditor on Schedule F–Creditors Holding Unsecured Nonpriority Claims. However, on July 17, 1992, the Debtor amended Schedule F to include the Trust's claim for "condo fees," which he estimated to be $4,505.00. On Schedule G–Executory Contracts and Unexpired Leases, the Debtor stated "none." On August 3, 1992, the Chapter 7 Trustee filed a Report of No Assets. The Debtor received a discharge under section 727(b), and his case was closed on November 10, 1992. The condominium units reverted to the Debtor pursuant to 11 U.S.C. § 554(c).[1]

Approximately fifteen months after the case was closed, the mortgagee, on March 9, 1994, foreclosed its mortgages on both units. At that time, unpaid common area fees for both of the Debtor's units for the period from December 1992 through March 1994 totalled $7,921.17. The Trust recovered $2,889.00 from the mortgagee in payment of the Trust's priority lien, leaving an unsecured balance of $5,032.17.

On March 31, 1994, the Trust filed suit in East Boston District Court to collect the unpaid post-petition common area fees. The Debtor defended the action on grounds that the debt had been discharged in bankruptcy. After a hearing, the district court entered judgment for the Trust in the amount of $6,356.37, which included attorney's fees and costs. The Trust has sought to collect its judgment through a supplementary process proceeding in the Wrentham District Court.

On September 13, 1995, the Debtor moved to reopen his bankruptcy case for the purpose of determining whether his debt to the

---

1. Section 554(c) provides the following:
 Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

11 U.S.C. § 554(c). It is not clear from the pleadings whether the Debtor continued to rent the condominium units after ownership reverted to him.

Trust was discharged. The Debtor also moved this Court to hold the Trust in contempt for attempting to collect a debt despite the Debtor's discharge and to impose sanctions against the Trust.

## III. ARGUMENTS OF THE PARTIES

In his memorandum, the Debtor argues that his condominium fee obligation is contractual in nature and arose at the time that he purchased the condominium units. Citing *Matter of Rosteck*, 899 F.2d 694 (7th Cir. 1990), he contends that his obligation to pay common area fees was discharged as a pre-petition debt.

The Trust principally relies upon *Stern v. Munroe (In re Stern)*, 44 B.R. 15 (Bankr. D.Mass.1984), and *River Place East Housing Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (4th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994), for the proposition that a debtor's condominium fee obligations arise when they are assessed on a monthly basis and, thus, constitute post-petition, non-dischargeable debts. Noting that state law defines property rights, the Trust additionally argues that, under Massachusetts law, the Debtor's obligation to pay common area fees derives from a covenant that runs with the land rather than from an executory contract. *See Trustees of Prince Condominium Trust v. Prosser*, 412 Mass. 723, 592 N.E.2d 1301 (1992). Parenthetically, the Trust states that the Debtor is collaterally estopped by the state court judgment from moving to reopen his case to seek a declaration that the condominium fees were discharged.

## IV. DISCUSSION

### A. Case Law

Several courts have addressed the issue of whether post-petition condominium common area fees are included in a debtor's discharge, leading to a split of authority. A number of courts has followed the Seventh Circuit's opinion in *Matter of Rosteck* and held that "post-petition condominium assessments [are] pre-petition debt, and therefore dischargeable." 899 F.2d at 696. *See Matter of Wasp*, 137 B.R. 71 (Bankr.M.D.Fla.

1992); *Cohen v. North Park Parkside Community Assoc. (In re Cohen)*, 122 B.R. 755 (Bankr.S.D.Cal.1991); *In re Turner*, 101 B.R. 751 (Bankr.D.Utah 1989); *In re Montoya*, 95 B.R. 511 (Bankr.S.D.Ohio 1988); *Behrens v. Woodhaven Assoc. (In re Behrens)*, 87 B.R. 971 (Bankr.N.D.Ill.1988). Noting that 11 U.S.C. § 727(b) "discharges the debtor from all debts that arose before the date of the order for relief," the *Rosteck* line of cases focuses upon the time that the debtor's condominium fee obligation arose. The Bankruptcy Code defines a "debt" as a "liability on a claim," 11 U.S.C. § 101(12), and a "claim," in turn, as a "right to payment, whether or not such right is ... contingent, matured, unmatured ...," 11 U.S.C. § 101(5). According to *Rosteck*, the term "claim" is to be interpreted broadly so as to include all of the Debtor's obligations, regardless of how remote or contingent they may be. *Rosteck*, 899 F.2d at 696 (citations omitted).

In *Rosteck*, the Seventh Circuit held that, under Illinois law, a "condominium declaration is a contract." *Id.* Therefore, by entering into an agreement to purchase a condominium unit, a debtor agreed to pay future assessments. *Id.* Although the amount of future fees is contingent and unmatured until assessed by the condominium association, the obligation constitutes a debt under the Code's broad definition of "debt." *Id.* at 697; *see also Turner*, 101 B.R. at 753; *Cohen*, 122 B.R. at 758. Thus, "[w]hen the Bankruptcy Court issued its discharge order[,] the unmatured, contingent condominium assessment was discharged." *Cohen*, 122 B.R. at 758; *see also Behrens*, 87 B.R. at 975 (debts under condominium agreement constitute pre-petition debts regardless of when the amounts due are assessed).

However, assuming that a debtor does not reaffirm the debt, only the debtor's *in personam* liability for future assessments is discharged. The condominium association may still proceed *in rem* against the property. *Wasp*, 137 B.R. at 72–73; *Turner*, 101 B.R. at 754.

A line of cases at the opposite end of the spectrum holds that a condominium association has no claim against a debtor until each

monthly installment of the assessment comes due. *See Horton v. Beaumont Place Homeowners Assoc. (In re Horton)*, 87 B.R. 650, 652 (Bankr.D.Colo.1987). Under this view, an obligation to pay condominium common area fees derives not from a contract but rather from a covenant that runs with the land. *See Rosenfeld*, 23 F.3d 833 (debtor's "obligation to pay the assessments arose from his continued post-petition ownership of the property and not from a pre-petition contractual obligation"); *Beeter v. Tri–City Property Management Services, Inc.. (In re Beeter)*, 173 B.R. 108 (Bankr.W.D.Tex.1994); *In re Raymond*, 129 B.R. 354 (Bankr. S.D.N.Y.1991); *In re Case*, 91 B.R. 102, 104 (Bankr.D.Colo.1988) (under Colorado law, a condominium declaration is a covenant that runs with the land and thus could not be rejected as an executory contract); *In re Harvey*, 88 B.R. 860 (Bankr.N.D.Ill.1988); *Rink v. Timbers Homeowners Assoc. I, Inc. (In re Rink)*, 87 B.R. 653 (Bankr.D.Colo. 1987). These cases hold that a debtor's personal liability for the assessments cannot be discharged in bankruptcy because the obligation to pay condominium fees ends only upon the termination of the debtor's ownership of the property. *See, e.g., Rosenfeld*, 23 F.3d at 838; *In re Dalton*, 183 B.R. 127 (Bankr.S.D.Tex.1995) ("[t]o the extent the condominium declaration creates a covenant running with the land, the owner of the condominium is liable for the maintenance assessments incurred during his period of ownership"); *Beeter*, 173 B.R. at 121.

Upon the filing of a petition, equitable ownership of the property passes to the bankruptcy estate. Therefore, these cases hold that a debtor is not personally liable for assessments levied during the time in which the condominium unit constituted property of the estate. *See Dalton*, 183 B.R. at 129; *In re Gonzalo*, 169 B.R. 13, 16 (Bankr.E.D.N.Y. 1994); *Raymond*, 129 B.R. at 364. Personal liability attaches only during the period of time after the trustee abandons the property and continues until the Debtor's ownership is terminated. *Raymond*, 129 B.R. at 364.

Some courts have taken a compromise approach to the issue, holding that a debtor who retains possession of a condominium unit after it is abandoned to him is liable for postpetition assessments. *See Matter of Pratola*, 152 B.R. 874, 877 (Bankr.D.N.J.1993); *In re Ryan*, 100 B.R. 411, 416 (Bankr.N.D.Ill.1989) ("[i]f, after offering to surrender ownership, the debtor remains in actual or constructive possession of the unit, then the debtor may be liable to the association for use and occupancy, including postpetition assessments").

Although these latter cases have been criticized as "results-oriented decisions driven by equity", *see Beeter*, 173 B.R. at 112–113, Congress chose to follow the third approach when it added section 523(a)(16) to the Bankruptcy Code as part of the 1994 Bankruptcy Reform Act.[2] However, since the instant case was commenced prior to the enactment of section 523(a)(16), this exception does not apply.

**B. Analysis**

■ The Court's analysis must begin with sections 524 and 727 of the Bankruptcy Code. Section 727(a) defines the scope of the Debtor's discharge, while section 524(a) describes its effect.

Section 727(b) of the Bankruptcy Code provides the following:

> Except as provided in section 523 of this title, a discharge under subsection (a) of

---

**2.** Section 523(a)(16) provides the following:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> (16) for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a dwelling unit that has condominium ownership or in a share of a cooperative housing corporation, but only if such fee or assessment is payable for a period during which—
>
> (A) the debtor physically occupied a dwelling unit in the condominium or cooperative project; or
> (B) the debtor rented the dwelling unit to a tenant and received payments from the tenant for such period,
>
> but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case.
>
> 11 U.S.C. § 523(a)(16).

this section discharges the debtor from all debts that *arose before the date of the order for relief* under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b) (emphasis supplied). It is axiomatic that a discharge under section 727 does not discharge a Chapter 7 debtor from debts that arose *after* the filing of the petition for relief.

Section 524(a) of the Bankruptcy Code, in addition to operating as an injunction against the commencement of an action to collect a debt as a personal liability of the debtor, provides that a discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ..., whether or not discharge of such debt is waived." 11 U.S.C. § 524(a). Designed to protect debtors from inadvertently losing the benefits of their discharge and from the historical circumvention of the bankruptcy law through state court judgments obtained by creditors as a result of debtors' failure to plead the discharge as an affirmative defense due to ignorance, inadvertence or inability to afford counsel, *see In re Levy*, 87 B.R. 107, 108 (Bankr.N.D.Cal.1988), section 524(a), nevertheless, does not divest state courts of the power to exercise concurrent jurisdiction with bankruptcy courts. *See* 28 U.S.C. § 1334(b).

The issue that has emerged in this case is whether, under Massachusetts law, the Debtor had an obligation to pay condominium fees that arose after his discharge. Because of the concurrent jurisdiction of the state courts and the bankruptcy court, and in the absence of any action on the part of the Debtor to remove the East Boston District Court case to this Court, *see* Fed.R.Bankr.P. 9027, the East Boston District Court properly exercised its jurisdiction to determine the issue.

The parties have stipulated that that court entered judgment in favor of the Trust having considered the Debtor's affirmative defense that the debt was discharged in his Chapter 7 case. Although the parties neither introduced a copy of the District Court judgment nor a copy of the court's written decision, if any, the Massachusetts Superior Court decided the identical issue in *Shadowbrook Condominium Trust v. O'Leary*, No. 93–2133, slip op., 1995 WL 809512. (Superior Court March 16, 1995). The Court presumes that the District Court was aware of that precedent.

In *Shadowbrook*, the court cited *Stern v. Munroe*, which appears to be the only case in which the issue of a debtor's liability for post-petition condominium common area fees has been considered and in which the court allowed the trustees of a condominium to continue an action in state court against the debtor for recovery of common area fees that accrued post-petition. 44 B.R. at 17. However, the court in *Stern* did not analyze the potential dichotomy between when the debt arose and when the fees accrued or the issue of the debtor's personal liability for fees accruing post-petition. *See Cohen*, 122 B.R. at 757; *Montoya*, 95 B.R. at 513. Thus, *Stern* is not dispositive of the issue.

Regardless of the soundness of any reliance upon *Stern*, the East Boston District Court had jurisdiction to decide the issue of whether condominium fees arose pre- or post-petition. *Cf. In re Ford*, 188 B.R. 523, 526 (Bankr.E.D.Pa.1995). In the *Ford* case, the court observed the following with respect to issues that must be determined under federal law:

> ... state courts have been held to have concurrent jurisdiction with bankruptcy courts as to certain issues even though those issues must be decided under federal law. This is usually true of dischargeability issues which need not be raised within a short time-period, and hence may be the subject of dispute long after the bankruptcy case is closed and jurisdiction of the bankruptcy court over the affairs of the debtor has been relinquished. A prime example of this sort of dispute is whether a particular obligation of a debtor is a dis-

chargeable indebtedness arising out of a divorce property settlement or is a nondischargeable alimony or support obligation under 11 U.S.C. § 523(a)(5).

*Id.*

 This Court finds that the East Boston District Court had concurrent jurisdiction to determine whether the scope of the Debtor's discharge under 11 U.S.C. § 524(a) extended to post-discharge condominium fees. *See Ford,* 188 B.R. at 526; *In re Levy,* 87 B.R. 107, 109 (Bankr.N.D.Cal.1988). Accordingly, the issue of whether the condominium fees were discharged has been determined, and res judicata bars re-litigation of the issue.[3]

 Even if this Court were to ignore the import of the District Court judgment, however, the Debtor's discharge did not extend to the condominium fees at issue here. As the Eighth Circuit recently noted, in order to decide which line of cases to follow, the Court must determine "whether the condominium declaration and corresponding documents are simply a contract or constitute a covenant running with the land." *In re Affeldt,* 60 F.3d 1292, 1296 (8th Cir.1995). In the instant case, as in *Affeldt,* neither the debtor nor the condominium association provided the court with the condominium declaration

or agreement. The Eighth Circuit declined to rely solely upon state law to determine whether the condominium declaration was a contract or a covenant running with the land and, therefore, did not follow either *Rosteck* or *Rosenfeld* or a combination of the two lines of cases. *Id.* However, despite the absence of the condominium documents, Massachusetts law is determinative of the nature of the debtor's obligation.

Condominiums are governed by M.G.L. c. 183A. At the time that the Debtor filed his Chapter 7 petition, M.G.L. c. 183A, § 6 provided that:

(a) The common profits shall be distributed among, and the common expenses shall be charged to, the unit owners according to their respective percentages of the undivided interest in the common areas and facilities.

(b) The unit owner shall be personally liable for all sums lawfully assessed for his share of the common expenses.

(c) The unit owner's share of the common expenses shall constitute a lien upon his unit.... Such lien shall have priority over all other liens, except municipal liens and first mortgages of record.

M.G.L. c. 183A, § 6.[4] In *Trustees of Prince Condominium Trust v. Prosser,* 412 Mass.

---

**3.** In *DiBerto v. Meadows at Madbury, Inc. (In re DiBerto),* 171 B.R. 461, 470 (Bankr.D.N.H.1994) (citing *Rhode Island Hospital Trust National Bank v. Bogosian (In re Belmont Realty Corp.),* 11 F.3d 1092 (1st Cir.1993)), the court noted the following:

> The elements involved in the application of res judicata have been set forth by the Court of Appeals of the First Circuit in a series of opinions which break the doctrine down into "claim preclusion" and "issue preclusion." The former is the more common conception of the doctrine while the latter is often referred to as "collateral estoppel" as well.... "[T]he 'claim preclusion' aspect of res judicata bars relitigation of any claim 'that was, or might have been, raised in respect to the subject matter of the prior litigation.' 'Issue preclusion' or 'collateral estoppel' on the other hand, prohibits relitigation 'of [a] factual or legal issue that was actually decided in previous litigation "between the parties whether on the same or on a different claim." ' "

Thus, the elements of res judicata are 1) a final judgment on the merits in an earlier action; 2) an identity of parties or privies in the two suits; and 3) an identity of the cause of action in the

earlier and later suits, *id.* (citing *Aunyx Corp. v. Canon U.S.A., Inc.,* 978 F.2d 3, 6 (1st Cir.1992), *cert. denied* 507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993)); and the elements of collateral estoppel are 1) a party had a full and fair opportunity to litigate an issue in an earlier action; 2) the issue was finally decided; 3) against the party; and 4) the issue was essential to the earlier judgment. *Id.* (citing *DeCosta v. Viacom Intern., Inc.,* 981 F.2d 602, 606 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993)).

In the instant case, the elements necessary to satisfy both doctrines are present. Because the Trust raised collateral estoppel in its Opposition to the Motion to Reopen, the Court finds that it did not waive reliance on the related affirmative defense of res judicata.

**4.** An amendment to c. 183A, § 6(c), which became effective on April 6, 1993, grants a condominium lien priority over a first mortgage for common area fees for the six-month period "immediately preceding institution of an action to enforce the lien," as well as costs and attorney's fees to enforce the lien. The Trust's priority lien was satisfied by the foreclosing mortgagee.

723, 592 N.E.2d 1301 (1992), the Supreme Judicial Court held that "the financial obligations of a unit owner are covenants running with the land." 412 Mass. at 725, 592 N.E.2d 1301. It explained its rationale as follows:

> Whatever grievance a unit owner may have against the condominium trustees must not be permitted to affect the collection of lawfully assessed common area expense charges. A system that would tolerate a unit owner's refusal to pay an assessment because the unit owner asserts a grievance, even a seemingly meritorious one, would threaten the financial integrity of the entire condominium operation. For the same reason that taxpayers may not lawfully decline to pay lawfully assessed taxes because of some grievance or claim against the taxing governmental unit, a condominium unit owner may not decline to pay lawful assessments.

*Id.* at 725–26, 592 N.E.2d 1301. In view of the decision in *Prosser*, this Court concludes that the *Rosenfeld* line of cases is dispositive under Massachusetts law.

In *In re Raymond*, 129 B.R. 354 (Bankr. S.D.N.Y.1991), the bankruptcy court explained the consequences of a determination that the obligation to pay condominium charges is a covenant that runs with the land. It stated:

> It is an obligation which not only binds them [the debtors], but would have bound their assigns and grantees. It is inseparably connected to the ownership of the condominium unit. The obligation, as a covenant running with the land, cannot be discharged under Code § 727(b) because this provision discharges claims, not ownership interests. A unit owner's obligation to pay common charges can only be extinguished by termination of the ownership interest itself. Had this merely been a promise to pay money 'isolated from the purpose of the payment', it would not be an obligation which runs with the land.

*Id.* at 364. Accordingly, the court ruled 1) that the debtor was liable for all charges accrued during the period of his ownership, excluding the time that his unit constituted property of the bankruptcy estate; 2) the debtor's liability for post-petition common charges began to accrue when the Chapter 7 trustee "abandoned" the condominium unit by filing a "no asset" report; and 3) the attempts to collect condominium fees did not violate the discharge injunction of section 524(d). *Id.*

With respect to the instant case, because the Debtor's obligation to pay common area fees is a covenant that runs with the land, the Court finds that the Debtor's obligation to pay the fees arose post-petition following reversion of the units to him pursuant to section 554(c), and, thus, was not included in his bankruptcy discharge. The Debtor is personally liable for the balance of the common area fees for the period between December 1992 and March 1994.

## V. CONCLUSION

In accordance with the foregoing, the Court finds that the judgment issued by the East Boston District Court is *res judicata* with respect to the Debtor's obligation to the Trust, and the obligation in the amount of $5,032.17, representing condominium fees that arose after the Debtor's discharge and the closing of his Chapter 7 case, is non-dischargeable. Accordingly, the Motion to Reopen is denied.